GLOBEX CORPORATION,

v.

The UNITED STATES.

No. 00–320C.

United States Court of Federal Claims.

Nov. 8, 2002.

---

Sam Z. Gdansky, Suffern, NY, for the plaintiff.

James W. Poirier, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for the defendant.

## OPINION

YOCK, Senior Judge.

This case is before the Court on the Defendant's Motion to Dismiss for Lack of Jurisdiction (the "Motion to Dismiss"), pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). As explained below, the plaintiff has failed to show, by a preponderance of the evidence,

that this Court has subject matter jurisdiction over its claim. Accordingly, the defendant's motion is granted, and the Complaint is to be dismissed.

## Background

The Sandia Corporation ("Sandia") entered into a contract with the Department of Energy (the "DOE," or the "Government"), effective October 1, 1993, pursuant to which Sandia managed and operated the Government-owned Sandia National Laboratories (the "Prime Contract"). On June 22, 1995, Globex Corporation (the "plaintiff") entered into a contract with Sandia, pursuant to which the plaintiff was to provide crane and hoist inspection and preventive maintenance for an initial contract term of two years (the "Globex Contract").[1]

On December 21, 1995, Sandia terminated the Globex Contract for convenience. In accordance with the termination clause in the Globex Contract, the plaintiff submitted a settlement proposal seeking $386,974.15. According to the plaintiff, a settlement was tentatively agreed upon, but the settlement was expressly contingent upon Sandia obtaining the Government's approval. Apparently, the Government did not approve the settlement agreement.

On March 17, 1999, the plaintiff filed a complaint against the Government in the United States District Court for the District of Columbia (the "District Court"). The District Court, determining that exclusive jurisdiction over the subject matter of the complaint lies in the United States Court of Federal Claims (the "Court of Federal Claims"), transferred the case to this Court.

The plaintiff filed his Complaint in this Court on June 28, 2000, alleging that the plaintiff had "received a contract from Sandia" (Compl.¶ 4) but that the Government is "ultimately responsible and liable" under the Globex Contract. (Compl.¶ 17.) The plaintiff seeks the full amount of its original settlement proposal, $386,974.15, plus additional "settlement expenses" of $551,361.15.

On October 17, 2000, the Government filed its Motion to Dismiss, contending that there is no privity of contract between the plaintiff and the Government and thus no basis for this Court to exercise subject matter jurisdiction over the plaintiff's claim. In response, the plaintiff filed "Plaintiff's Opposition to Defendant's Motion to Dismiss" (the "Plaintiff's Original Response"), in which it asserted that the plaintiff has privity of contract with the Government because Sandia acted as an agent of the Government. In that filing, the plaintiff also cited an unpublished opinion of the United States Court of Appeals for the Federal Circuit (the "Federal Circuit") for the proposition that the plaintiff must be given an opportunity to develop jurisdictional facts relating to its case. The plaintiff requested "that the Court construe liberally the rules permitting any amendment of complaint to conform to this Opposition to Defendant's Motion To Dismiss" (Pl.'s Original Resp. at 2) and also requested the opportunity to conduct discovery. *Id.* at 2–3.

Because the plaintiff relied upon an agency, or "deemed privity," theory to invoke this Court's jurisdiction, a theory that had not been pled in the Complaint, this Court issued an Order on February 9, 2001, instructing the plaintiff to amend the Plaintiff's Original Response to cite relevant provisions of the Prime Contract that supported such jurisdiction, in accordance with the leading "deemed privity" cases decided by the Federal Circuit. The Government provided a copy of the Prime Contract to the plaintiff's counsel for this purpose.

On March 22, 2001, the plaintiff filed "Plaintiff's Supplemental Motion to Respond to Defendant's Motion to Dismiss" (the "Sup-

---

1. The plaintiff attached a copy of the Globex Contract to the "Plaintiff's Supplemental Motion to Respond to Defendant's Motion to Dismiss," and, for ease of reference, the Globex Contract will be referred to herein as "Pl.'s Appx." The Globex Contract was executed by the president of Globex, as "Authorized Contractor Representative," and by the "Sandia Contracting Representative." (Pl.'s Appx. at 0001.) The Globex Contract defines the "Sandia Contracting Representative" as "[t]he only person authorized to execute and/or administer this contract on behalf of Sandia * * *." *Id.* at 0025. "Sandia" is defined as "Sandia Corporation, a prime contractor of the United States Department of Energy, which operates Sandia National Laboratories * * *." *Id.* The "Government" is defined as "[t]he United States of America." *Id.*

plement to the Plaintiff's Original Response"). In that filing, the plaintiff cited three provisions of the Globex Contract but did not cite any provisions of the Prime Contract to support its "deemed privity" argument. The plaintiff's filing concluded that the "[p]laintiff rests on its earlier response to Defendant's Motion to Dismiss."

This Court issued an Order on July 27, 2001, granting the plaintiff leave to amend its Complaint to plead its "deemed privity" theory, as the plaintiff had requested in the Plaintiff's Original Response. The Order once again directed that, if the plaintiff elected to file an amended Complaint, the plaintiff was to cite relevant provisions of the Prime Contract in support of its "deemed privity" theory, consistent with leading "deemed privity" cases. On December 20, 2001, however, the plaintiff filed a one-page status report informing the Court that it would not be filing an amended Complaint. The filing concluded that "our position has been succinctly set forth in the filings to date and there exist [sic] privity under the circumstances of this case."

On February 28, 2002, this Court denied the Motion to Dismiss without prejudice to renewal, ruling that the jurisdictional facts in the case had not been developed enough to determine whether or not this Court could exercise jurisdiction over the plaintiff's claim. The Court granted the parties three months of discovery in order to develop further relevant jurisdictional facts. On May 31, 2002, the plaintiff requested three additional months of discovery, which was granted by this Court, notwithstanding opposition by the defendant.

On September 9, 2002, the plaintiff filed "Plaintiff's Supplemental Comments With Respect to Additional Briefing" (the "Discovery Status Report"). In that one-page filing, the plaintiff reported that it "is unable to offer any additional factual evidence, and stands by its comments submitted previously with respect to its opposition to the Government's motion." The defendant thereafter renewed the Motion to Dismiss, and the plaintiff responded with its "Corrected Opposition to Defendant's Motion to Dismiss" (the "Plaintiff's Second Response"). Oral argument was not requested and is deemed unnecessary.

## Discussion

### I. Standard of Review

In assessing the Motion to Dismiss, this Court accepts as true all undisputed allegations of fact asserted by the plaintiff and construes all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When subject matter jurisdiction is challenged by the defendant in a motion to dismiss, the burden is on the plaintiff to establish subject matter jurisdiction by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir. 1988). If the complaint is particularly well pled, such that facts supporting the invocation of this Court's jurisdiction are clear on its face, then the plaintiff's burden has already been satisfied. *See Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997) (asserting that "[a] well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction"). In the absence of such detailed pleading, however, it is incumbent upon the plaintiff to do more than merely rely upon unsupported allegations in the complaint- the plaintiff's burden is to proffer relevant facts which tend to show, by a preponderance of the evidence, that this Court does indeed have jurisdiction over the plaintiff's claim. The plaintiff may meet its jurisdictional burden by presenting evidence outside the initial complaint: "[i]n establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposi-

tion testimony." *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993). The court's responsibility is to give the party asserting jurisdiction an opportunity to be heard on the jurisdictional issue before ordering dismissal of a complaint for lack of jurisdiction. *Reynolds,* 846 F.2d at 748. Whether or not the plaintiff actually uses that opportunity to present additional jurisdictional evidence is, of course, entirely within the plaintiff's discretion.

## II. *Jurisdiction*

Like all Federal courts, the Court of Federal Claims is a court of limited jurisdiction. Consent to suit in this Court is granted by congressional waiver of the Government's traditional sovereign immunity, and such waivers must be unequivocally expressed and strictly construed. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (waivers of immunity cannot be implied but must be unequivocally expressed); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (same); *United States v. N.Y. Rayon Imp. Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 91 L.Ed. 577 (1947) (waivers of sovereign immunity must be express and strictly construed). Ambiguities regarding the existence of subject matter jurisdiction must be "resolved against the assumption of jurisdiction." *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux,* 24 F.3d 1368, 1373 (Fed.Cir.1994).

■ The Tucker Act, 28 U.S.C. § 1491, provides the basic governmental consent for suits to be brought against the Government in this Court. The statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1994). This statute does not create any substantive right enforceable against the United States for money damages; rather, it "merely confers juris-diction upon [the Court of Federal Claims] whenever the substantive right exists." *Testan,* 424 U.S. at 398, 96 S.Ct. 948. Accordingly, in order to maintain a suit in this Court, a claimant must look beyond the Tucker Act and identify a contract with the Government, a constitutional provision, a Federal statute, or a regulation which mandates the payment of money to the claimant. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

■ As a prerequisite to jurisdiction in this Court, a plaintiff asserting a contract claim against the Government must have privity of contract with the Government. *National Leased Hous. Ass'n v. United States,* 105 F.3d 1423, 1435 (Fed.Cir.1997). A finding of privity between the plaintiff and the Government is a jurisdictional prerequisite for a contract claim because "[t]he government consents to be sued only by those with whom it has privity of contract." *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984). Generally, the requirement of privity "simply means that the alleged contract must actually be between the plaintiff and the government, and if such is not found, this court simply lacks jurisdiction to entertain [the plaintiff's] claims." *Martinez v. United States,* 48 Fed. Cl. 851, 860 (2001) (citing *Cienega Gardens v. United States,* 194 F.3d 1231, 1239 (Fed.Cir.1998)), *aff'd,* 281 F.3d 1376 (Fed.Cir.2002). Because subcontractors typically are not in privity of contract with the Government, the well-entrenched general rule is that subcontractors cannot directly sue the Government. *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550 (Fed.Cir.1983).

■ In some rare instances, however, privity of contract may be found between the Government and a subcontractor even though the Government's signature does not appear on the dotted line of the subcontract. It has been recognized, for example, that "there can be privity of contract between the government and subcontractors where the prime contractor is a mere government agent." *Johnson Controls,* 713 F.2d at 1551. In order to succeed on this "deemed privity"

theory, however, a subcontractor must demonstrate that:

> the prime contractor was (1) acting as a purchasing agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price.

*Id.* Courts look to the provisions of the prime contract to determine whether or not an agency relationship can be implied between the Government and the prime contractor. *See id.; National Leased Hous.*, 105 F.3d at 1436.

### III. *The Plaintiff's Privity Arguments*

The Complaint alleges a contract between the plaintiff and Sandia. The Complaint also recites the plaintiff's belief that the DOE was ultimately responsible and liable under the Globex contract. The Complaint by itself, however, does not connect the dots as to why a contract with Sandia equates to privity of contract between the plaintiff and the Government. The mere conclusory allegation that "Department of Energy was ultimately responsible and liable," unsupported by any factual assertions, does not satisfy the plaintiff's jurisdictional burden and, on its own, would not withstand a motion to dismiss. *See Briscoe,* 663 F.2d at 723 (asserting that "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss").

In the Plaintiff's Second Response, the plaintiff attempts to remedy the Complaint's jurisdictional shortcomings by arguing that Sandia acted as the agent of the Government in entering into the Globex Contract, creating privity of contract between the Government and the plaintiff and thus Tucker Act jurisdiction in this Court. The plaintiff does not identify any provision of the Prime Contract, however, that expresses Governmental consent to an agency relationship with Sandia. The plaintiff also fails to identify any provision of the Prime Contract that authorizes Sandia to act as a purchasing agent for the Government or that makes the Government directly liable to vendors for the pur-

chase price. Consequently, the plaintiff has failed to meet any of the three factors that heretofore have been required in the "deemed privity" jurisprudence of the Federal Circuit. *See Johnson Controls,* 713 F.2d at 1551; *National Leased Hous.*, 105 F.3d at 1436 (both cases listing the prerequisites to a finding of "deemed privity," namely: (1) the prime contractor acted as a purchasing agent for the Government; (2) the agency relationship between the Government and the prime contractor was established by clear contractual consent; and (3) the prime contract stated that the Government would be directly liable to the vendors for the purchase price).

Because a finding of privity of contract equates to a finding of a waiver of sovereign immunity, and waivers of sovereign immunity must be strictly construed, this Court must narrowly construe requirements for establishing privity. Consequently, this Court is proscribed from finding a waiver of sovereign immunity unless a contractor either: (1) has a direct contract with the Government, or (2) has completely satisfied all of the elements of a recognized exception to the requirement of direct privity of contract, such as the "deemed privity" exception articulated in the law of the Federal Circuit. As further explained below, the plaintiff has failed to assert facts that establish jurisdiction under either scenario.

Instead of relying on the traditional requirements of establishing "deemed privity," the plaintiff embarks on two alternative paths in an attempt to have this Court identify a waiver of the Government's traditional sovereign immunity to suit. First, notwithstanding the absence of the traditional elements of "deemed privity," the plaintiff maintains that "in this case Sandia has acted as an agent for the U.S. Government." (Pl.'s Second Resp. at 1.) Second, the plaintiff argues that this Court could find that "Sandia is a Federal entity for purposes of finding Tucker Act jurisdiction in this Court." *Id.* In support of its theories, the plaintiff cites one case from the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), one opinion of the United States District Court for the Northern District of California, three contract award protest deci-

sions by the General Accounting Office (the "GAO"), and provisions of the Globex Contract.

## A. *Sandia as Agent of the Government*

■ The plaintiff cites *Ferguson v. United States*, 712 F.Supp. 775 (N.D.Cal.1989), for the proposition that actions of Sandia can be attributed to the Government. In *Ferguson*, the Government had entered into a contract with Sandia relating to the operation and management of Sandia National Laboratories, which expressly provided that *"Sandia Corporation acts as an agent for and on behalf of the DOE for certain purposes." Ferguson*, 712 F.Supp. at 779. Among the certain purposes listed in the contract, Sandia was expressly named as *"the agent of the DOE in the* purchase, lease, or other acquisition, *and in the management, maintenance, protection, safeguarding,* sale, and disposition *of all property* of any kind whatsoever, real or personal, used in the performance of this Contract." *Id.* A security inspector, injured when a fence erected on the grounds of Sandia National Laboratories collapsed, brought a lawsuit in tort against the Government in a Federal district court. The court held that the Government had contractually waived its sovereign immunity by designating Sandia as its agent for maintaining property on the grounds of the Sandia National Laboratories. Consequently, the court determined that the Government could be subject to liability for the plaintiff's injuries pursuant to the Federal Tort Claims Act.[2]

The flaw in the plaintiff's reliance on *Ferguson* is that the Prime Contract at issue in the instant case is not the same contract that was at issue in *Ferguson*. Although the Government provided a copy of the Prime Contract to the plaintiff, and the plaintiff has had a generous six months of discovery during which to peruse the Contract, the plaintiff has not identified any provision in the Prime Contract that remotely resembles the agency language that existed in the *Ferguson* contract. Unlike *Ferguson*, the plaintiff here simply has not shown that the Prime

Contract establishes any agency relationship between the Government and Sandia. Consequently, the analogy fails to establish the requisite waiver of sovereign immunity that is necessary for this Court to exercise Tucker Act jurisdiction over the plaintiff's claim.

## B. *Sandia as a Federal Entity*

■ The plaintiff also asserts that Sandia may be considered a Federal entity for Tucker Act purposes. In support of this argument, the plaintiff contends that several provisions of the Globex Contract use the terms "Sandia" and "Government" interchangeably. The plaintiff also points to a GAO decision, which the plaintiff contends uses the terms "Sandia" and "Government" interchangeably. In addition, the plaintiff cites another GAO decision that describes Sandia National Laboratories as a "government-owned" entity. None of these exercises in semantics, however, convinces the Court that the plaintiff's contract with Sandia created privity of contract with the Government.

Sandia National Laboratories has been described by various adjudicative bodies as a "government-owned" laboratory. *See, e.g., United States v. New Mexico*, 455 U.S. 720, 723, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) (referring to the "Government-owned Sandia Laboratories in Albuquerque, N.M."); *General Electrodynamics Corp.*, 1978 WL 10321, 1978 U.S. Comp. Gen. LEXIS 2844 at *2 (Jan. 31, 1978) (referring to "Sandia Laboratories, a Government-owned laboratory"). The plaintiff's countersignatory to the Globex Contract, however, is Sandia Corporation, not Sandia National Laboratories. Sandia Corporation has been described as "a Delaware corporation," *Ferguson*, 712 F.Supp. at 776, a "privately owned corporation[ ]," *New Mexico*, 455 U.S. at 740, 102 S.Ct. 1373, and, in the plaintiff's own words, a subsidiary of "Lockheed Martin Corporation." (Compl.¶ 13.) The plaintiff's assertion that Sandia Corporation is essentially a Federal entity (Pl.'s Second Resp. at 1) ignores the important distinction between Sandia National Laboratories and Sandia Corporation.

---

**2.** As an alternative ground, the court also determined that the Government was liable for negligent acts of Sandia, because the contractual provisions made Sandia a Government employee for whose actions the Government was liable. *Ferguson*, 712 F.Supp. at 779.

The Supreme Court has examined the distinction, however, and this Court will adopt its language here: Sandia is a "privately owned corporation[ ]," in which " 'Government officials do not run * * * day-to-day operations nor does the Government have any ownership interest,' " and thus Sandia "cannot be termed [a] 'constituent part[ ]' of the Federal Government." *New Mexico,* 455 U.S. at 740, 102 S.Ct. 1373 (quoting *First Agric. Bank v. State Tax Comm'n,* 392 U.S. 339, 354, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968)).

The Plaintiff's Second Response cites *Amray, Inc.,* Comp. Gen. Dec. B–208308, 83–1 CPD ¶ 43, 1983 WL 26348 (1983), as an instance where the terms "Sandia" and "Government" were used interchangeably by the GAO. In that decision, however, the defined term "Sandia" refers to Sandia National Laboratories, not Sandia Corporation. Because Sandia National Laboratories is a Government-owned entity, the terms "Sandia" and "Government" in that particular decision quite naturally would be used interchangeably, much as the terms "DOE" and "Government" are used interchangeably in this Opinion. Contrary to the plaintiff's misreading of the defined term, nothing in the *Amray* decision supports the plaintiff's argument that Sandia Corporation is essentially a Federal entity.

■ In the Supplement to the Plaintiff's Original Response, the plaintiff also attempts to bolster its "Sandia–as–a–Federal–entity" argument by pointing to a few provisions of the Globex Contract that it contends use the terms "Sandia" and "Government" interchangeably. As an initial matter, the Court notes that a contractor cannot bind the Government via provisions of a subcontract unless such authority has been granted by the Government. · "Anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government." *Trauma Serv. Group,* 104 F.3d at 1325. The plaintiff has neither identified any provision of the Prime Contract nor alleged any other source that delegates such authority to Sandia. Without such actual delegated authority, any provision in the Globex Contract that purported to bind the Government would be unenforceable.

Notwithstanding that initial observation, the provisions cited by the plaintiff do not use the terms "Sandia" and "Government" interchangeably. The provisions cited by the plaintiff provide, *inter alia,* that "Sandia or the Government has the right to inspect and test all materials furnished and services performed under this contract," (Pl.'s Appx. at 0030), "Sandia or the Government shall accept or reject services and materials at the place of delivery," *id.,* and "Sandia, or the Government, and all their designees shall have access at all reasonable times to the premises in which any Government property is located," *id.* at 0036. These provisions do not haphazardly use "Sandia" and "Government" as interchangeable terms. Rather, the terms are always used conjunctively, giving both the Government and its prime contractor concurrent inspection, rejection, and access rights. The fact that the DOE has concurrent inspection and access rights to ensure, for example, that nuclear safety and other regulations and standards are followed by contractors and subcontractors, does not serve as a basis for the plaintiff to bring a contract claim against it. *See D.R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 598, 372 F.2d 505, 508 (1967) (asserting that "[i]t would be farfetched indeed to impose liability on the Government for the acts and omissions of the parties who contract to build the projects, simply because it requires the work to meet certain standards").

In short, neither the plaintiff's analogy to *Ferguson* nor the provisions of the Globex Contract cited by the plaintiff constitute jurisdictional facts that would support the assertion that Sandia is a Federal entity.

## IV. *The Plaintiff's Miscellaneous Arguments*

The plaintiff cites *New SD, Inc. v. Rockwell International Corp.,* 79 F.3d 953 (9th Cir.1996), for the proposition that "federal law should control" the interpretation of the Globex Contract. (Pl.'s Second Resp. at 2.) In *New SD,* a subcontractor filed suit in a state court for breach of contract and other alleged wrongs against a prime contractor of

the Government. The Ninth Circuit affirmed removal of the suit to a Federal district court, holding that " 'the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law.' " *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d at 955 (quoting *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 644 (9th Cir.1961)).

This Court fails to see the relevance of the plaintiff's citation. Even if it is true that Federal law is the applicable law governing the contract dispute between Globex and Sandia, the same jurisdictional infirmity afflicting the Complaint still remains: the plaintiff has presented no facts that tend to show that this particular Federal court has jurisdiction over the plaintiff's claim.

The Plaintiff's Second Response also cites several GAO contract award protest decisions in which the GAO entertained protests of contract awards by prime management contractors that operated and managed DOE facilities. The plaintiff does not indicate, however, how jurisdiction of the GAO over those particular protests translates into jurisdiction in this Court over controversies arising out of contract performance. The GAO has, in the past, articulated a policy to "consider, under appropriate circumstances, protests of awards made by prime contractors * * * where we find the contractor's award was made 'for' an agency of the Federal Government." *Optimum Sys., Inc,* B–183,-039, 54 Comp. Gen. 767, 774, 1975 WL 11692 (1974). Even if this Court followed the GAO's policy in reviewing, "under appropriate circumstances," prime contractors' actions under subcontracts awarded "for" the Government, however, the plaintiff has not presented any jurisdictional facts showing that these are such "appropriate circumstances" or that Sandia awarded the Globex Contract "for" the Government.

In summary, the plaintiff identifies no provision of the Globex Contract that can reasonably be construed as purporting to bind the Government, no provision of the Prime Contract that would authorize Sandia to bind the Government contractually in any event, and no convincing authority whatsoever that

Sandia is a Federal entity. Despite the opportunity to amend the Complaint and to conduct discovery, the plaintiff still has failed to show, by a preponderance of the evidence, that privity of contract exists between the Government and the plaintiff under any theory.

In its Discovery Status Report, the plaintiff requests that it nonetheless "be permitted to go forward with its presentation of the substantive element and quantum, so the Court will be persuaded both as to the privity argument as well as entitlement and quantum." That request is denied. The whole purpose in permitting the opportunity to amend the Complaint and in allowing six months for discovery was to give the plaintiff an opportunity to show that this Court has subject matter jurisdiction over its claim. Despite the opportunity, the plaintiff has not proffered facts that support the existence of privity of contract between the Government and the plaintiff. Absent privity of contract with the Government, this Court has no jurisdiction to entertain the plaintiff's "presentation of the substantive element and quantum." Accordingly, the Complaint must be dismissed.

## CONCLUSION

For the reasons set forth above, the defendant's Motion to Dismiss is granted, and the Complaint is to be dismissed for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1). The Clerk of the Court is ordered to enter judgment accordingly.

Each party is to bear its own costs.