**BLUE WATER ENVIRONMENTAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 04–424C.

United States Court of Federal Claims.

March 31, 2004.

David H. Peirez, Garden City, N.Y. for plaintiff. Craig M. Johnson, and Justin M. Vogel, of counsel.

Elizabeth Thomas, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General, and Director David M. Cohen, for defendant.

### ORDER ON MOTION TO DISMISS

FIRESTONE, Judge.

This post-award bid protest case, filed under 28 U.S.C. § 1491(b)(1), is before the court on the government's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims. The plaintiff, Blue Water Environmental, Inc. ("Blue Water"), seeks to set aside a contract awarded for environmental cleanup work at the Brookhaven National Laboratory ("BNL"), which is owned by the Department of Energy ("DOE"). The government seeks to dismiss the case on the grounds that the contract at issue is not with the United States. In particular, the government contends that the subject contract is a private contract between the awardee, Envi-

rocon, Inc. ("Envirocon"), and Brookhaven Science Associates, L.L.C. ("BSA"). BSA operates BNL under contract no. DE–AC02–98CH10886, a management and operations ("M & O") contract, with DOE. According to the government, BSA is not a federal agency and was not serving as a "purchasing agent" for DOE when it solicited for the subject contract. For these reasons, the government contends that there is no basis for this court's review and, thus, the case must be dismissed. For the reasons discussed below, the government's motion to dismiss is hereby **GRANTED.**

## BACKGROUND FACTS

BNL, located on the Peconic River in Upton, New York, is owned by DOE. On January 5, 1998, DOE entered into the M & O contract with BSA for the benefit of BNL.

On September 3, 2003, BSA issued the request for proposal ("RFP") PG–55 for the Peconic River Remediation project ("Peconic River project"), which called for the environmental cleanup of on-site portions of the Peconic River, and potential future work addressing contaminated sediments beyond BNL's border. In keeping with BSA's prime contract with DOE, at clause I.114(j), that "*[s]ubcontracts* shall be in the name of the contractor, and shall not bind or purport to bind the Government," [1] RFP PG–55 indicates that BSA, acting under prime contract "DE–AC0298CH10886 with [DOE]," will be responsible for the contract award. RFP PG–55 states that BSA will be establishing the "schedule for achieving evaluation, selection approval award and performance." RFP PG–55 also states that "Brookhaven reserves the right to accept or reject all or any part of this offer ...;" "Brookhaven reserves the right to postpone the date of submission, and to amend this request as it considers necessary ...;" and "Brookhaven reserves the right to reject any or all quotations, to accept any proposals, and to waive or disregard any informality in any proposals." RFP PG–55 also includes "Attachment A," Article 28, which expressly states that

RFP PG–55 does not grant the subcontractor the right to appeal disputes to DOE, but only affords negotiation and mediation rights among the private parties to the sub-contract. "The Contractor agrees to submit all disputes, claims or controversies arising out of or relating to this Agreement to negotiation and then mediation ... before bringing any action in court."

The merits of the subject action concern the application of the Davis–Bacon Act, 40 U.S.C. § 276a, to this contract. The Davis–Bacon Act requires that payment be made to labor based on prevailing wages: "[E]very contract ... to which the United States ... is a party ... shall contain a provision stating the minimum wages to be paid various classes of laborers ... which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers ...." *Id.* In RFP PG–55, DOE's Brookhaven Area Office's Davis–Bacon Committee had determined that the remediation work would not fall under the Davis–Bacon Act. However, after re-examining the scope of work covered by solicitation, DOE issued a revised Davis–Bacon determination and determined that the Davis–Bacon Act would apply to certain work. This in turn required BSA to issue the revised RFP, RFP PG–55A on October 6, 2003.

On October 28, 2003, BSA awarded to Envirocon a contract for the remediation work based on the revised RFP PG–55A. Due to concerns from local labor representatives over DOE's determination that the remediation project was only partially covered by the Davis–Bacon Act, DOE's Brookhaven Area Office's Davis–Bacon Committee requested an advisory opinion from its Chicago Operations Office's Davis–Bacon Committee. The Chicago Office's committee reviewed the work scope, along with a 1993 memorandum, uncovered during their research, in preparing the advisory opinion. The Brookhaven Area Office's Davis–Bacon committee had not considered the 1993 memorandum when it made its determination. The Chicago Of-

---

1. A complete copy of the M & O contract between BSA and DOE is available on line at    http://www.bnl.gov/prime/searchprime.asp.

fice committee recommended that the "sub-contract for soil removal and revegetation work performed during the Peconic River Remediation Project should be considered Davis–Bacon covered work." On November 17, 2003, after considering the Chicago Office's committee advisory opinion, the Brookhaven Area Office's committee determined that the entire project was Davis–Bacon covered. As a result of this new determination, BSA decided to terminate its contract with Envirocon on November 20, 2003.

On November 12, 2003, the plaintiff received a letter from Michael Goldman, the Deputy General Counsel of BSA, in response to its inquiry regarding General Accounting Office ("GAO") regulations and policies regarding protesting the award of the revised solicitation. In the letter, Mr. Goldman states that "GAO did not entertain protests from disappointed proposers arising out of a solicitation by [BSA] as manager and operator of [BNL]." Mr. Goldman also wrote, "I did also indicate to you that under BSA's existing contract with the [DOE], the DOE would not accept a protest of a BNL procurement."

On November 24, 2003, BSA issued the third and final RFP, RFP JS–03, with all the work Davis–Bacon covered. Under RFP JS–03, as with the previous requests for proposals, BSA, not DOE, was responsible for establishing the "schedule for achieving evaluation of revised proposals, selection approval, award and performance." RFP JS–03 designated a BSA employee, Mr. Paul Simons, as the representative to accept proposals. RFP JS–03 also provides, as did the original and revised RFPs, that "Brookhaven reserves the right to reject any or all proposals, or to accept any proposal." Furthermore, in Attachment A to RFP JS–03, the solicitation specifies that the sub-contractor does not have the right to appeal disputes to DOE, but requires that disputes be taken to a third-party private mediator.

BSA received five proposals for the remediation contract, including a proposal from Blue Water, which were reviewed by a proposal evaluation panel made up of BSA employees. The BSA source selection official reviewed the technical and cost evaluation results and the proposals were ranked in descending order. The top-ranked proposal was again submitted by Envirocon. Envirocon had both the highest technical score and the lowest cost. On February 23, 2004, Envirocon was awarded the contract by BSA for $6.06 million. The contract between BSA and Envirocon provides that "[t]his Contract does not bind nor purport to bind the Government of the United States."

## THE PRESENT ACTION

Blue Water filed the present action on March 17, 2004, claiming that BSA acted as DOE's "agent" and "illegally, arbitrarily and capriciously . . . review[ed] the proposals under the Request for Proposal," and violated the law by awarding the contract to Envirocon. The government filed its motion to dismiss on March 22, 2004 and the plaintiff filed its response on March 26, 2004. Oral argument on the government's motion to dismiss was held on March 29, 2004.

## DISCUSSION

### I. Standard of Review

In this case the court must determine whether Blue Water may maintain this action against the United States. In particular, the government charges that because the subject contract is not with the United States, this court lacks subject matter jurisdiction over the claim. The court, in reviewing a motion to dismiss a under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, must construe the allegations favorably to the pleader. "In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a claim, the allegations of the complaint should be construed favorably to the pleader." *McCauley v. United States*, 38 Fed.Cl. 250, 262–63 (1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (other citations omitted). In determining jurisdictional facts, the court may consider matters outside the pleadings. "If a motion to dismiss for lack of subject matter jurisdiction, however, challenges the truth of the jurisdictional facts alleged in the complaint, the district court

may consider relevant evidence in order to resolve the factual dispute." *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988) (citations omitted).

The ultimate burden is on the pleader to prove that the court has jurisdiction to hear its claims. *See Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991) ("A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists.") (citing *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936)).

## II. The Court of Federal Claims Only Has Jurisdiction Over a Bid Protest if the Solicitation was Issued by a Federal Agency

■ The Tucker Act, 28 U.S.C. § 1491(b)(1), which confers jurisdiction over bid protests to the United States Court of Federal Claims, is explicit in that the entity that issues the solicitation must be a federal agency. Pursuant to Section 1491(b)(1), this court has jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

Therefore, to bring a bid protest in this court, the plaintiff must have competed in a government-sponsored solicitation, which was issued by a federal agency and not a private party. This court has "no authority over non-Federal entities." *Bell BCI Co. v. United States,* 56 Fed.Cl. 465, 469 (2003). Therefore, in order to establish jurisdiction, the plaintiff must prove in this case that BSA is itself a federal entity or is acting as an "agent" for a federal entity.

## III. BSA Is Not a Federal Agency Under a "Day–to–Day" Supervision Theory

■ The government argues that BSA is a limited liability company, not a part of DOE, and, therefore, it is not a government agency subject to suit under the Tucker Act. The government argues that pursuant to DOE Acquisition Regulation 970.4402–1 "DOE contracts for the management and operation[, or M & O,] of its facilities ...," and that according to 970.4402–2, "Contractor purchases are not Federal procurements, and are not directly subject to the Federal Acquisition Regulations ...." According to the government, BSA is a private company that contracted with DOE to run BNL under a M & O contract. Under the M & O contract, the government contends, DOE has left the day-to-day management of BNL to BSA.

The plaintiff argues in response that BSA should be deemed a federal agency on the grounds that contrary to the government's assertions, DOE is responsible for the day-to-day supervision of BSA's activities. The plaintiff argues that BSA is, therefore, in effect, a federal agency for purposes of the subject procurement and the Tucker Act. The plaintiff points to various documents in which DOE asserts responsibility for ensuring a proper cleanup of the Peconic River. It also notes that the Davis–Bacon Act applicability decision was made by DOE and not by BSA. Further, it relies upon internal BSA statements regarding the limitations placed on BNL researchers, which, as the plaintiff asserts, establish that even BSA believes it is a federal agency. According to the plaintiff, these facts show that DOE is directly responsible for supervising BSA's activities and, thus, BSA is in effect a federal agency. In support of its position, the plaintiff relies on *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), for the proposition that direct federal agency supervision of day-to-day operations of a government contractor may convert the government contractor into a federal agency for Federal Tort Claims Act purposes.

It is well-settled that for purposes of determining Tucker Act jurisdiction, the definition of "agency" in 28 U.S.C. § 451 is controlling. Section 451 states that, for purposes of the judiciary, "agency," "includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless context shows that such term was

intended to be used in a more limited sense." In *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1080 (Fed. Cir.2001), the Federal Circuit held that the definition of "agency" found in Section 451 controls the meaning of "federal agency" for purposes of the Tucker Act.

Although private contractors, like BSA, are plainly not included within the definition of "agency" under Section 451, the plaintiff argues that Section 451 is not exhaustive and may "include" contractors like BSA who are managing and operating a government facility under the day-to-day supervision of the Federal Government. The plaintiff argues that it has alleged sufficient facts to demonstrate that DOE is in fact responsible for the day-to-day supervision of BSA and, thus, the subject subcontract is really a contract with a "federal agency."

The government argues that DOE's role in the cleanup process or in overseeing BSA's compliance with the rules and regulations governing work at BNL does not convert BSA into a "federal agency" for purposes of the Tucker Act. The government cites several cases where the courts have distinguished between oversight of a contract and direct supervision of the work itself, such as *Globex Corp. v. United States,* 54 Fed.Cl. 343 (2002) and *Lockheed Martin Corp. v. United States,* 50 Fed.Cl. 550 (2001), *aff'd* 48 Fed.Appx. 752 (Fed.Cir.2002) (unpublished). The government contends that these cases demonstrate that DOE's ordinary supervision over its M & O contractors does not make M & O contractors agencies of the government. The government also points out, with respect to the subject procurement, that the undisputed evidence shows that DOE did not assume day-to-day supervision of BSA subcontracting activities. According to the government, the undisputed evidence establishes that BSA undertook the procurement on its own and did not involve DOE in the decision-making process.

The court agrees with the government. Here, without reaching the issue of whether DOE's supervision of BSA's activities might qualify as federal actions for other purposes, the evidence does not support a finding that BSA was an "agency" under a day-to-day supervision theory in connection with the subject procurement. In the present case, the un-controverted affidavits submitted by the government establish that BSA acted independently from DOE in connection with the subject procurement. The affidavits establish that BSA employees did not consult with DOE in selecting and awarding the subcontract to Envirocon. DOE's contracting officer, Robert P. Gordon, states that he and his staff did not participate in the subcontracting process at issue. BSA's Manager of Procurements and Property, Mary–Faith Healy, states in her affidavit that BSA acted without direct supervision by DOE: "The Government did not participate in or exercise any control over the procurement process. Specifically, DOE contracting officer, Mr. Robert Gordon, did not review the Peconic River project solicitation or contract; did not participate in the source selection activities; nor, did Mr. Gordon select the winning contractor, Envirocon." ¶ 7.

Given the uncontradicted evidence that DOE was removed from day-to-day supervision of the sub-contracting process at issue here, the court has no basis for concluding that BSA was acting as a federal entity for the purposes of the subject procurement. The plaintiff's reliance on language in various documents to show that DOE was and will be deeply involved in the Peconic River project does not alter this conclusion. The government's role in ensuring that the contractors meet government standards does not convert the subject contract from a private subcontract to a federal contract. *See Globex,* 54 Fed.Cl. at 350 ("The fact that DOE has concurrent inspection and access rights to ensure ... that regulations and standards are followed by contractors and subcontractors, does not serve as a basis for the plaintiff to bring a contract claim against it."). DOE's role in the cleanup decision making process does not make the subject procurement a federal contract. Furthermore, the subcontracting process was not controlled by DOE. Thus, assuming *arguendo* that plaintiff's day-to-day supervision theory is sufficient to establish "agency" for purposes for the Tucker Act, the plaintiff has failed to

establish that DOE supervised or directed the subcontracting process in this case.

## IV. BSA is Not the Government's Purchasing Agent

█ Although the plaintiff focused its attention on a day-to-day supervision theory, the court will still examine whether BSA was serving as DOE's purchasing agent in this case. In *US West Comm. Servs., Inc. v. United States*, 940 F.2d 622 (Fed.Cir.1991), the Federal Circuit held that bid protest jurisdiction might be appropriate under the Brooks Act, 40 U.S.C. § 759, where a government prime contractor is serving as the government's purchasing agent.

In *US West*, a potential subcontractor sought to bring a bid protest under the Brooks Act against the DOE based on a solicitation issued by an M & O contractor for a data processing contract. The Brooks Act gave exclusive jurisdiction over bid protests for federal data processing contracts to the General Services Administration Board of Contract Appeals ("GSBCA"). The jurisdictional provision of the Brooks Act was nearly identical to the Tucker Act. It stated that the GSBCA would have jurisdiction over, "a written objection by an interested party to *a solicitation by a federal agency* for bids or proposals for a proposed contract ...." *US West*, 940 F.2d at 626 (citing 40 U.S.C. § 759(f)(9)(A) (1988)) (emphasis added). In *US West*, the GSBCA had taken jurisdiction over a bid protest by a disappointed subcontractor. In support of its jurisdiction, the GSBCA found an agency relationship because "DOE (1) approves the decision to procure the [services], (2) is the final selection authority of the [services] contractor, (3) takes title to the material of the [services], and (4) pays for the [services] systems with government funds." *Id.* at 629.

On appeal, the Federal Circuit rejected the GSBCA's jurisdictional determination and

held the GSBCA had applied the wrong "agency" test in taking the protest.[2] Instead, the Federal Circuit held that to establish an agency relationship which would allow a subcontractor to challenge the contract, the subcontractor would need to establish the three factors as set forth in *United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed. Cir.1983). Under *Johnson Controls*, a subcontractor may establish an agency relationship where, "[t]he prime contractor was (1) acting as a purchasing agent for the government; (2) the agency relationship between the government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the government would be directly liable to the vendors for the purchase price." 713 F.2d at 1551. In applying these factors to the subcontract in *US West*, the Federal Circuit held that the subcontractor could not establish an "agency" relationship between the M & O contractor and DOE. First, the Federal Circuit noted that "there is nothing in [the] M & O contract that says [the prime contractor] is to act as DOE's procurement agent." 940 F.2d at 629. Second, the Federal Circuit noted that the M & O specifically states that " '[s]ubcontracts shall be in the name of the Contractor, and shall not bind or purport to bind the Government.' " *Id.* The Federal Circuit concluded that because the subcontractor could not establish an agency relationship between DOE and the M & O contractor for the subject procurement, the subcontractor had no right to challenge the subcontract award before the GSBCA. *Id.*[3]

While the court recognizes that this case does not arise under the Brooks Act, the court finds the reasoning in *US West* persuasive in deciding the present case. The critical language of the Tucker Act and Brooks Act is the same. Both statutes require a "solicitation by a federal agency." Thus, only to the extent a potential subcontractor can challenge a contract award under the

---

2. The plaintiff contends that *US West* is not relevant because it is based on a different statutory scheme. The court disagrees. Although a portion of the *US West* decision is based solely on the unique statutory scheme, the portion relating to "agency" is relevant to this case.

3. Every court to apply the *Johnson Controls* purchasing agent in an M & O contract context has concluded that M & O subcontracts are not contract with the federal government. *See, e.g., Globex Corp.*, 54 Fed.Cl. 343; *Lockheed Martin*, 50 Fed.Cl. 550; *Lasker–Goldman Corp. v. United States*, 4 Cl.Ct. 89 (1983).

Brooks Act, should a subcontractor be able to challenge an award under the Tucker Act.

Here, the plaintiff cannot meet the purchasing agent test adopted in *US West*. The plaintiff has failed to establish any of the factors necessary to establish a purchasing agent relationship under *US West*. In this case, as in *US West*, the M & O contract with BSA clearly states that "[s]ubcontracts shall be in the name of the contractor, and shall not bind or purport to bind the Government." I.114(j). The contract awarded to Envirocon also states that "[t]his Contract does not bind nor purport to bind the Government of the United States." In addition, the affidavit of Ms. Healey expressly states that "[t]he prime contract between the Government and BSA does not grant BSA the authority to act as a purchasing agent for the Government and BSA was not acting as a purchasing agent when [BSA] awarded the contract to Enviro-con." ¶ 8. Thus, just as the subcontractor in *US West* failed to establish agency, there is no evidence here to support a finding that BSA was DOE's purchasing agent. In such circumstances, the subcontract awarded to Envirocon is not subject to this court's bid protest jurisdiction.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is **GRANTED**. Judgment shall be entered for the United States. Each party to bear its own costs.